UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------x
JEFF PANARELLO,

                                  Plaintiff,                      **MEMORANDUM**
                                                                  **AND ORDER**
      -against-                                                 20-CV-3281 (SIL)

POLICE OFFICER KEITH KRAMER,

                                Defendant.
------------------------------------------------------------------x

**STEVEN I. LOCKE, United States Magistrate Judge:**

       Presently before the Court in this Section 1983 litigation is Defendant Keith Kramer's ("Defendant" or "Kramer") motion for summary judgment ("Defendant's Motion" or "Def. Mot."), pursuant to Rule 56 of the Federal Rules of Civil Procedure ("Fed. R. Civ. P."), DE [263]. By way of Complaint dated July 10, 2020, DE [1], amended by First Amended Complaint dated September 17, 2020, DE [8] and Second Amended Complaint dated May 20, 2021, DE [27], Plaintiff *pro se* Jeff Panarello ("Plaintiff" or "Panarello") commenced this action against Defendant pursuant to 42 U.S.C. § 1983 ("Section 1983"), asserting a claim for excessive force in violation of his civil rights under the Fourth Amendment. *See* Second Amended Complaint ("2d Am. Compl."), DE [27]. For the reasons set forth below, the Court grants Defendant's Motion and dismisses the Second Amended Complaint with prejudice.[1]

---

[1] The parties have consented to this Court's jurisdiction for all purposes. *See* DEs [146], [147]; Elec. Order dated March 10, 2023.

1

I. BACKGROUND

A. **Relevant Facts**

The following facts are taken from the parties' pleadings, submissions, and exhibits, and Defendant's Local Rule 56.1 statement.[2] As established below, many of the facts are in dispute.

    a. *The Parties*

Plaintiff is a resident of Commack, New York. *See* Defendant's Rule 56.1 Statement ("Def. Rule 56.1"), DE [263-1], ¶ 1. Kramer is a Suffolk County Police Officer. *See* Defendant's Mem. in Support of Defendant's Mot. for Summary Judgment ("Def. Mem."), DE [263-2], at 1.

    b. *The April 29, 2020 Email*

According to Defendant, on April 29, 2020, Panarello sent an email (the "Email") with the subject line "ASSISTED DYING" to numerous recipients, including the Honorable Karen Kerr, a judge in the "New York State Court," in which Plaintiff stated that he had "voluntarily decided to end [his] suffering." *See* Def. 56.1, ¶ 2 and Ex. B; Def. Mem. at 1. Panarello denies sending the Email. *See* Transcript of Oral Argument dated November 13, 2023 ("Oral Argument Tr."), DE [305], 6:16-8:7;[3] Letter Mot. to Compel, DE [315], at 1. Kramer contends that he and two other officers, Officers William Popielaski and Howard Smith, were dispatched on April 29, 2020 to Plaintiff's residence in response to the Email. *See* Def. 56.1, ¶ 2; *id.*, Ex. C,

---

[2] Panarello did not file a Rule 56.1 statement or counterstatement.
[3] Because Plaintiff had trouble drafting a written response to Defendant's Motion, the Court permitted him, after being sworn in on the record, to present his opposition verbally. *See* DE [228]; Elec. Order dated Aug. 1, 2023; Oral Argument Tr., 4:11-25, 5:7-14.

2

Statement of William Popielaski ("Popielaski Statement"); *id.*, Ex. D, Statement of Howard Smith ("Smith Statement"). Panarello does not dispute that police officers, including Kramer, were dispatched to his residence on that date. *See* Oral Argument Tr. at 5:15-18.

        c. *The April 29, 2020 Home Visit*

According to Defendant, upon arrival at Plaintiff's residence, Officers Kramer, Popielaski and Smith knocked on the front and rear doors, received no response, and entered through the unlocked rear door. *See* Def. 56.1, ¶ 3. Panarello counters that the officers entered through his landlord's garage and house, but does not dispute that an unspecified door to his apartment, through which police entered, was unlocked. *See* Oral Argument Tr. at 9:6-11, 10:8-10. Plaintiff also states that the officers "probably" knocked, and he "probably just said come in or whatever." *Id.*, 10:2-12.

Kramer contends that "[t]he officers found Panarello lying in bed under a blanket in the dark." Def. 56.1, ¶ 4. According to Defendant, the officers informed Panarello that "he was to be transported to the Comprehensive Psychiatric Emergency Program at Stony Brook Hospital ("CPEP") for emergency psychiatric evaluation[.]" *Id.* Panarello refused to get out of bed. *See id.* Kramer "attempted to remove the blanket covering Panarello so that the officers could get a view of his hands." *Id.*, ¶ 5. Defendant states that Plaintiff "pulled back on the blankets, which caused him to slide to the floor." *Id.*; *see id.*, Ex. A, Mental Health Assistance Incident

3

Report; Popielaski Statement; Smith Statement. Kramer then transported Panarello to CPEP. Def. 56.1, ¶ 6.

Plaintiff disputes this account, although he agrees that when the officers entered his apartment, he was "under a blanket." *See* Oral Argument Tr., 11:1-3. According to Panarello, when the officers entered his apartment, they questioned him at gunpoint and accused him of sending the Email, which Plaintiff denied. *See id.* at 10:15-19. According to Plaintiff, who describes his left leg as "paralyzed" and his right leg as "weak," his wheelchair was near his bed. *See* Oral Argument Tr., 12:2-7; 18:10-13. Plaintiff contends that he agreed to sit up in bed, but asked the officers to give him his sweatpants or sweatshirt to get dressed. *See* Oral Argument Tr., 10:20-24, 12:2-12. According to Panarello, as he was attempting to leave his bed, Kramer "lost patience" with him, grabbed Plaintiff's left leg, "yanked" him "really hard," and caused Panarello to "fl[y] off the bed . . . about three feet off the ground." *Id.*, 13:15-23, 14:9-12. Once Plaintiff was on the ground, he contends that "one of [the officers]," who he "guess[es]" was Kramer, "grabbed [his] left shoulder and yanked it with a lot of force…pulling [him] around the apartment," resulting in a dislocated shoulder and "bruised . . . ribs." Oral Argument Tr., 14:17-25, 15:2-5, 36:14-16. Panarello states that the officers refused to allow him to use his wheelchair and instead assisted him in leaving his apartment on crutches. *Id.*, 18:3-21. Plaintiff consented to being transported to the hospital by "the officer who attacked [him]" because he was "scared." *Id.*, 18:19-25, 19:1-6.

4

### d. *Panarello's Subsequent Medical Treatment*

The parties agree that, from his home, Panarello was taken to CPEP by an officer, whom Defendant identifies as himself. *See* Def. 56.1, ¶ 6; Oral Argument Tr., 35:21-24. According to Plaintiff, his shoulder was examined at CPEP. *See id.*, 35:21-25, 36:1-4. Kramer takes the position that "Panarello did not report any physical injury to CPEP and did not receive medical treatment for any injury while there." Def. 56.1, ¶ 7. Plaintiff's medical records from CPEP, *see* Def. 56.1, ¶ 7 and Ex. E, do not indicate whether his shoulder was examined, and do not state that Panarello's left shoulder was dislocated, that Plaintiff complained of shoulder pain, or that any bruising was present. The CPEP medical records state that Panarello "endorse[d a] mild cough," used a "neck brace, crutches [and a] lumbar brace" as a result of a past laminectomy. Def. 56.1, Ex. E, at 124. The records further state that, at the time of his admission, Panarello was "in [a] wheelchair," *id.* at 101, and that Plaintiff had "no [history] of trauma other than [a past] bus accident." *Id.* at 67. According to these records, Plaintiff reported his pain level as "0 = no pain." *Id.* at 54.

The parties further agree that Panarello was transferred from CPEP to a second hospital, *see* Def. 56.1, ¶ 8; Oral Argument Tr., 23:19-24, which Kramer identifies as South Oaks Hospital ("South Oaks"). *See* Application for Involuntary Admission, Def. 56.1, Ex. F. Plaintiff remained at South Oaks for a week. *See* Def. 56.1, ¶ 9; Oral Argument Tr., 24:12-13. According to Panarello, his injured shoulder was examined at South Oaks. *See* Oral Argument Tr., 35:24-25, 36:1-4. Kramer contends, on the other hand, that Plaintiff "did not report having sustained any injury

5

at the hands of the police, nor did he receive medical treatment for any such injury" during his hospitalization there.  Def. 56.1, ¶ 9.  The records of Panarello's hospitalization at South Oaks contain no reference to his left shoulder, *see* Def. 56.1, Ex. G, and explicitly note a lack of bruises on Plaintiff's person. *Id.* at 25.  The South Oaks records indicate an injury to the *right* shoulder, however, which was described as "tendonitis."  *See id.* at 19, 62.  When Panarello was assessed on May 6, 2020, Plaintiff "denie[d] any pain and [did] not believe he need[ed] any pain management." *Id.* at 9; *see id.* at 29, 65, 76, 92 (noting that Panarello reported no pain at assessments on April 30, 2020, May 1, 2020, and May 4, 2020).  At other assessments on April 30, 2020, however, Plaintiff reported unspecific "physical pain" or "chronic pain." *See id.* at 39, 43, 62.

Plaintiff testified that he received additional medical examinations after April 29, 2020, although he does not clarify the dates of these examinations.  Specifically, Panarello asserted that he received two independent medical examinations ("IMEs") "right after the police attack" in conjunction with an unrelated litigation.  *See* Oral Argument Tr., 28:15-25, 29:1-9.  Plaintiff also contended that "evidence" is "missing" from "City M.D.," which entity is not described, that is relevant to his purported shoulder injury.  *See id.*, 36:22-25, 37:1-10.  Finally, Panarello testified that, on an unspecified date, his neurologist "checked out [his] shoulder and found shoulder damage," and "want[ed] [Plaintiff] to go to pain management and physical therapy . . . not just for the shoulder but for other things, too."  *Id.*, 34:23-25, 35:1-4.  Plaintiff later submitted a document, apparently a record of his September 25, 2023, visit to

6

Dr. Musarat Shareeff, M.D., of "NHPP Neurosciences at Huntington."[4]  *See* DE [306] at 26.  This record contains a physiatry referral due to "left shoulder pain."  *Id.*

## B. Procedural History

By way of Complaint dated July 10, 2020, amended by First Amended Complaint dated September 17, 2020, and Second Amended Complaint dated May 20, 2021, Plaintiff commenced this action against defendants Kramer, the Suffolk County Supreme Court, and Gerber Caino Kelly Brady LLP, alleging a variety of Section 1983 claims against Kramer and "wanton delay" and "indifference to Plaintiff's Health" against the latter two defendants.  *See* 2d Am. Compl., § III.  On December 13, 2021, Judge Kiyo A. Matsumoto, who presided on that date, dismissed the Suffolk County Supreme Court and Gerber Caino Kelly Brady LLP for lack of subject matter jurisdiction.  *See* Elec. Order dated Dec. 13, 2021.

On September 19, 2023, Defendant moved for summary judgment on the only remaining claim in this action—excessive force in violation of the Fourth Amendment.  *See generally* Def. Mot.; Oral Argument dated May 10, 2023, DE [182][5].  As set forth above, *see* n.3, Panarello moved to argue his opposition orally, which the Court permitted.  *See* DE [228]; Elec. Order dated Aug. 1, 2023.  Oral argument was

---

[4] Panarello submitted numerous other medical records prior to the Court's order that "summary judgment proceedings [were] closed."  *See* Elec. Order dated Dec. 13, 2023; DEs [16], [22], [64], [99], [101], [141-1], [145-3], [190].  These records either predate April 29, 2020, *see* DEs [141-1], [145-3], or do not address any injury alleged by Panarello in the operative complaint.  *See* DEs [16], [22], [64], [99], [101], [141-1], [190].  Accordingly, these records are irrelevant.

[5] Defendant's Memorandum references the First Amended Complaint, DE [8], not the Second Amended Complaint.  *See* Def. Mem. at 1.  Because the only remaining cause of action in the Second Amended Complaint is also the only claim in the First Amended Complaint, the Court nevertheless interprets Defendant's Motion as applying to the Second Amended Complaint.  *See* DE [8] at 4-6.

conducted October 10, 2023. *See* DE [278]. For the reasons set forth below, Defendant's Motion is granted in its entirety.

## II. LEGAL STANDARDS

### A. Fed. R. Civ. P. 56

Pursuant to Fed. R. Civ. P. 56, a "court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant bears the burden of establishing that there are no issues of material fact such that summary judgment is appropriate. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2004). In deciding the motion, the Court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of West Hartford*, 361 F.3d 113, 122 (2d Cir. 2004); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986) (holding that a motion for summary judgment should be denied if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the movant has met its initial burden, the party opposing summary judgment "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a genuine issue for trial." *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87, 106 S. Ct. 1348, 1356 (1986) (internal quotation omitted); *see also Maxton v. Underwriter Labs., Inc.*, 4 F. Supp. 3d 534, 542

(E.D.N.Y. 2014) ("An issue of fact is considered 'genuine' when a reasonable finder of fact could render a verdict in favor of the non-moving party").

In determining whether summary judgment is warranted, "the court's responsibility is not to resolve disputed issues of fact but to assess whether there are any factual issues to be tried, while resolving ambiguities and drawing reasonable inferences against the moving party." *Knight v. U.S. Fire Ins. Co.*, 804 F.2d 9, 11 (2d Cir. 1986); *see also Artis v. Valls*, No. 9:10-cv-427, 2012 WL 4380921, at *6, n. 10 (N.D.N.Y. Sept. 25, 2012) ("It is well established that issues of credibility are almost never to be resolved by a court on a motion for summary judgment.").

### B. *Pro Se* Pleadings

Pleadings filed by *pro se* plaintiffs are held "to less stringent standards than formal pleadings drafted by lawyers[.]" *Erickson v. Pardus*, 551 U.S. 89, 94, 127 S. Ct. 2197, 2200 (2007) (internal quotation marks and citation omitted). The Second Circuit has held that a court reviewing a *pro se* complaint must "construe the complaint broadly, and interpret it to raise the strongest arguments that it suggests." *Weixel v. Bd. of Educ. of the City of New York*, 287 F.3d 138, 145-46 (2d Cir. 2002) (internal alterations omitted). Further, courts must afford *pro se* plaintiffs "special solicitude" before granting motions for summary judgment. *Tracy v. Freshwater*, 623 F.3d 90, 101 (2d Cir. 2010) (citation omitted). However, the court "need not argue a pro se litigant's case nor create a case for the *pro se* which does not exist." *Ogunmokun v. Am. Educ. Servs.*, No. 12-cv-4403, 2014 WL 4724707, at *3 (E.D.N.Y. Sept. 23, 2014) (internal quotation marks and citation omitted).

### III.   DISCUSSION

Applying the standards set forth above, and for the reasons set forth below, the Court grants Defendant's Motion in its entirety and dismisses the Second Amended Complaint with prejudice.

42 U.S.C. § 1983 provides, in relevant part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State…subjects, or causes to be subjected, any citizen of the United States…to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured….

42 U.S.C. § 1983.  Although Section 1983 itself does not create substantive rights, it does provide "a procedure for redress for the deprivation of rights established elsewhere." *Sykes v. James*, 13 F.3d 515, 519 (2d Cir. 1993).  To prevail on a claim arising under 42 U.S.C. § 1983, a plaintiff must demonstrate:  "(1) the deprivation of any rights, privileges, or immunities secured by the Constitution and its laws; (2) by a person acting under the color of state[-]law." *Hawkins v. Nassau Cnty. Corr. Fac.*, 781 F. Supp. 2d 107, 111 (E.D.N.Y. 2011) (citing 42 U.S.C. § 1983); *see also Dubin v. County of Nassau*, 277 F. Supp. 3d 366, 384 (E.D.N.Y. 2017) (quoting *Cornejo v. Bell*, 592 F.3d 121, 127 (2d Cir. 2010)).

### A. **Plaintiffs' Fourth Amendment Excessive Force Claim**

As explained above, Panarello's only remaining cause of action is his Fourth Amendment excessive force claim, brought pursuant to Section 1983 and based on his allegation that "Defendant assaulted [him] without cause." *See* 2d Am. Compl., § III.  Kramer seeks summary judgment on this cause of action, arguing that:  (i)

Panarello has failed to establish that Defendant used more than *de minimis* force; and (ii) alternatively, Kramer is entitled to qualified immunity. *See* Def. Mem. at 2-8.

Plaintiff has failed to establish his excessive force cause of action. The Supreme Court has held that where an excessive force claim "arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment." *Graham v. Connor,* 490 U.S. 386, 394-95, 109 S. Ct. 1865, 1871 (1989). An excessive force claim is analyzed under the standard of reasonableness, balancing "'the nature and quality of the intrusion on the individual's Fourth Amendment interests' against the countervailing governmental interests at stake." *Id.* at 396, 109 S. Ct. at 1871 (*quoting Tennessee v. Garner,* 471 U.S. 1, 2, 105 S. Ct. 1694, 1696 (1985)); *see also Curry v. City of Syracuse,* 316 F.3d 324, 332 (2d Cir. 2003) ("Application of physical force is 'excessive' when it is more than is necessary in the circumstances.").

Whether an injury must be more than *de minimis* to sustain an excessive force claim is unsettled in this Circuit. *See Eckhaus v. City of New York*, No. 18-CV-6901, 2023 WL 3179506, at \*6 (E.D.N.Y. May 1, 2023), *appeal dismissed* (July 11, 2023); *Rizk v. City of New York*, 462 F. Supp. 3d 203, 223 (E.D.N.Y. 2020) (collecting cases). But plaintiffs who cannot demonstrate *any* injury resulting from interactions with law enforcement are typically unsuccessful in bringing excessive force claims. *See Greene v. City of New York*, No. 21-CV-05762, 2024 WL 1308434, at \*12 (S.D.N.Y. Mar. 26, 2024) ("Pushes or shoves that cause no injury cannot support an excessive

11

force claim."); *Moreira v. City of New York*, No. 19-CV-5402, 2022 WL 1230412, at *4 (E.D.N.Y. Jan. 14, 2022) (granting summary judgment on excessive force claim because plaintiff produced no evidence tracing any injury to his arrest); *Style v. Mackey*, No. 17-CV-1691, 2020 WL 3055319, at *5 (E.D.N.Y. June 8, 2020) (same).

Further, "where a plaintiff's allegations are 'contradicted by medical documents, his word alone is not enough to create a genuine dispute of material fact.'" *Rodriguez v. Cnty. of Nassau*, No. 18-CV-03845, 2023 WL 2667076, at *12 (E.D.N.Y. Mar. 28, 2023) (citing *Rolkiewicz v. City of New York*, 442 F. Supp. 3d 627, 643 (S.D.N.Y. 2020)); *see Smith v. City of New York*, No. 18-CV-05079, 2021 WL 4267525, at *7 (S.D.N.Y. Sept. 20, 2021) ("[G]iven the lack of evidence supporting his [excessive force] claim[ ] and the contradictions between his testimony and his medical records, no reasonable jury could credit Plaintiff's version of the facts."); *Jenkins v. Town of Greenburgh*, No. 13-CV-8845, 2016 WL 205466, at *5 (S.D.N.Y. Jan. 14, 2016) ("Where undisputed medical records directly and irrefutably contradict a plaintiff's description of his injuries, no reasonable jury could credit plaintiff's account of the happening.") (citation omitted).

Here, Panarello alleges a dislocated left shoulder and bruising resulting from Defendant's purported excessive force. *See* Oral Argument Tr., 36:11-20, 15:2-5. Kramer has submitted medical records from CPEP[6] and South Oaks, where the

---

[6] Panarello filed a motion in limine with respect to the CPEP records, arguing that they contained "false" information and were "potentially misleading," which the Court denied. *See* DE [306] at 9-19; Elec. Order dated Dec. 13, 2023. This challenge does not call into question the authenticity of the CPEP records because Plaintiff does not claim that the records are not what they "purport[ ] to be," *see United States v. Vayner*, 769 F.3d 125, 130 (2d Cir. 2014), and because Panarello relies on the CPEP records in the same motion. *See* DE [306] at 16; *Ross v. Koenigsmann*, No. 14-CV-1321, 2017

parties agree Panarello spent the week following his alleged injury by Defendant. *See* Def. 56.1, ¶¶ 6-9, Exs. E and G; Oral Argument Tr., 35:21-24, 24:12-16. At CPEP, medical staff conducted multiple physical assessments of Plaintiff the same day as his alleged injury by Defendant, including an examination of his skin. *See* Def. 56.1, Ex. E, at 9-12, 65, 73. No records note a dislocated shoulder or bruising, and Panarello's pain level was noted as "0 = no pain." *See id.* at 54. Similarly, Plaintiff's South Oaks records are completely devoid of any reference to bruising or a dislocated left shoulder. In fact, during a "body check" on April 30, 2020, the medical provider examining Panarello specifically noted that no bruising was present. *Id.* at 25. While the South Oaks Records are inconsistent as to whether Panarello experienced pain during his hospitalization, *compare* Def. 56.1, Ex. G at 39, 43, 62 *with id.* at 9, 29, 65, 76, 92, only a right shoulder injury was recorded, which was described as "tendonitis." *See id.* at 30, 62. The only medical record in the summary judgment record reflecting "left shoulder pain" is dated September 25, 2023, more than three years after the incidents giving rise to the operative complaint. *See* DE [306] at 26. This substantial lapse in time and lack of any indication that Plaintiff's left shoulder was injured when he arrived at CPEP does not "permit a reasonable trier of fact to conclude that the force employed by [Defendant] . . . caused Plaintiff's injury." *Jenkins*, 2016 WL 205466, at *5.[7]

---

WL 9511096, at *4 (N.D.N.Y. Aug. 16, 2017), *report and recommendation adopted sub nom. Ross v. Mannava*, 2017 WL 4338883 (N.D.N.Y. Sept. 29, 2017).

[7] On August 10, 2024, Plaintiff submitted a medical record dated July 31, 2024, reflecting a medical diagnosis of "impingement syndrome of shoulder, left." As with the medical record from 2023, because this record is dated more than four years after April 29, 2020, it does not create a genuine issue of material fact as to whether Kramer injured Panarello's shoulder. *See* Mot. for Miscellaneous Relief, DE [394], at 5-7.

Because Panarello's alleged injuries resulting from Kramer's purported use of excessive force are directly contradicted by the CPEP and South Oaks medical records, which reflect his physical condition for the week immediately following April 29, 2020, "no reasonable jury could credit [Panarello's] account" of his injuries. *Jenkins*, 2016 WL 205466, at *5. Accordingly, Plaintiff's uncorroborated testimony that he suffered a dislocated shoulder and bruising because of Kramer's conduct does not "create a genuine dispute of material fact," and summary judgment is appropriate. *Rodriguez v. Cnty. of Nassau*, 2023 WL 2667076, at *12.[8]

## IV.   CONCLUSION

For the reasons set forth above, Defendant's Motion is granted in its entirety and the Second Amended Complaint is dismissed with prejudice.

Dated:   Central Islip, New York
         September 5, 2024

/s/ Steven I. Locke
STEVEN I. LOCKE
United States Magistrate Judge

---

[8] Panarello has failed to establish a genuine issue of material fact as to Kramer's alleged Fourth Amendment violation, and so the Court does not reach Defendant's qualified immunity argument. *See Hope v. Pelzer*, 536 U.S. 730, 736, 122 S. Ct. 2508, 2513 (2002); *Accardi v. Cnty. of Suffolk*, No. 21-CV-05051, 2024 WL 1345233, at *8 n.6 (E.D.N.Y. Mar. 29, 2024).